Matthias, J.,
 

 dissenting. I am in accord with the conclusion of the majority that Reynolds was not, at the time of the accident, included within the definition of the word, “insured,” as used in the omnibus clause of the policy issued by the defendant to Bernard Straus. Reynolds was driving the truck in disregard of the instructions of the owner, a gross violation of the original permission granted him. Such use was excluded from coverage by the requirement in the policy that “the
 
 actual
 
 use of the automobile” must be “with the permission of the named insured.” (Emphasis supplied.)
 

 I do not agree, however, with the holding of the majority that the provisions of Section 6298-7, General Code (a part of the Ohio financial responsibility law) require that the
 
 use
 
 of the motor vehicle contemplated therein be the same kind of use as that covered by and specified in the omnibus clause of the policy of insurance involved in this case. The words, “actual use,” do not appear in Section 6298-7, General Code, and should not be inserted therein by construction.
 
 *158
 
 The language employed in this section differs materially from that found in the omnibus clause.
 

 This case involves the construction of the language used in an insurance policy, whereby the insurer intended to grant, to the owner of the automobile insured, coverage in addition to that set forth in the “omnibus” clause. The language set forth in condition number seven of the policy contained the following sentence, in addition to that which is set forth in the majority opinion:
 

 “The insured agrees to reimburse the company for any payment made by the company which it would not have been obligated to make under the terms of this policy except for the agreement contained in this paragraph. ’ ’
 

 This added liability necessarily was based on the terms of the Ohio financial responsibility law, Section 6298-1
 
 et seq.
 

 The Ohio financial responsibility law is designed to promote the safety of and secure greater protection to the general public. That law has as its objective the elimination from the highways of those who have demonstrated, their financial irresponsibility by failure to respond in damages for injuries negligently inflicted upon others and have become a highway hazard.
 

 A second objective is the granting of additional protection to owners who carry liability insurance policies containing provisions required by the financial responsibility law, thus enabling response in damages for
 
 any
 
 injury which anyone covered by such policy may negligently inflict upon another. Other provisions of the statute limit the right of drivers who have been convicted of serious offenses, particularly the violation of traffic laws.
 

 The financial responsibility law is^ specific in defining the “motor vehicle liability policy” necessary to comply with the act, and as a very important part of
 
 *159
 
 this act, Section 6298-7, General Code, requires an omnibus clause in such policies. This requirement, shows that the General Assembly intended not only to protect the public against careless drivers but against heedless and careless entrustment of vehicles to them by the owners. The purpose of the ordinary liability contract of an insurer and the insured owner is to indemnify the owner against personal liability. The purpose of the financial responsibility law is to protect the public from loss by injury caused by financially irresponsible drivers. The fact that this statutory protection of others incidentally protects the driver from financial liability is not so important.
 

 The language used by the General Assembly in the Financial Responsibility Act should be interpreted with the purpose of the law fully in mind. Section 6298-7, General Code, requires that the policy “designate, by explicit description or other adequate reference, all motor vehicles with respect to which coverage is intended to be granted by said policy, and shall insure the insured named therein and
 
 any other person using or responsible for the use of
 
 any such motor vehicle with the consent, express or implied, of such insured, against loss * * (Emphasis supplied.)
 

 That language is very similar to the Massachusetts statute, which defines a motor-vehicle liability policy as “a policy of liability insurance which provides indemnity for or protection to the insured and any person responsible for the operation of the insured’s motor vehicle with his express or implied consent against loss by reason of the liability to pay damages to others for bodily injuries * * 3 Annotated Laws of Massachusetts, 182, Chapter 90, Section 3£A.
 

 Massachusetts has pioneered in the enactment of financial responsibility statutes, and the great similarity in the language of its statute and the Ohio financial responsibility law indicates that the General Assembly
 
 *160
 
 of Ohio approved that section of the Massachusetts law by enacting Section 6298-7, General Code. Decisions interpreting the Massachusetts law are pertinent in the consideration of the meaning of the language thus used by the General Assembly of Ohio.
 

 The term, “responsible,” as used in the Massachusetts statutes as construed by the court of last resort of that state applies to one who is responsible to the owner of the motor vehicle for its operation even though the person entrusted with the vehicle breaks the contract of bailment.
 
 O’Roak
 
 v.
 
 Lloyds Casualty Co.,
 
 285 Mass., 532, 189 N. E., 571. See, also,
 
 Boudreau
 
 v.
 
 Maryland Casualty Co.,
 
 287 Mass., 423, 192 N. E., 38;
 
 Blair
 
 v.
 
 Travelers Ins. Co.,
 
 288 Mass., 285, 192 N. E., 467; and
 
 Guzenfield
 
 v.
 
 Liberty Mutual Ins. Co.,
 
 286 Mass., 133, 190 N. E., 23.
 

 The term, “responsible,” is discussed in 7 Apple-man Insurance Law and Practice, 141, as follows:
 

 “It is necessary for the claimant, in a suit upon such a policy, to show that the vehicle was being operated with the insuréd’s implied or express consent by one responsible for its use. The term ‘responsible’, as used in the act, means liable, answerable, or under a bounden duty for its proper use in accordance with the terms upon which possession was delivered. One to whom the owner voluntarily entrusts the automobile would be a person ‘responsible’ to such owner. This contemplates that the insurer’s liability will run with the car unaffected by the owner’s action, unless its presence on the public ways was without his sanction.”
 

 The facts in the instant case present an entrustment of a truck by the insured to a customer, who had purchased furniture from the insured owner and a gross diversion by this customer driver from the permitted use of the truck. This driver was, however, at all times responsible to the owner of the truck for his (the driver’s) use of the vehicle and came within
 
 *161
 
 the provisions of the Ohio financial responsibility law.
 

 The original permission of Reynolds to drive the truck is conceded. Therefore, judgment should have been rendered by the Court of Common Pleas for the plaintiff and against the insurer for not more than the sum provided by the Ohio financial responsibility law, which, in this case, was the sum of five thousand dollars.